**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| MIA BROWN,<br><br>*Plaintiff*,<br>v.<br><br>KENNETH WILLIAMS and PLATEAU EXCAVATION, INC.,<br><br>*Defendants*. | Civil Action No. 1:26-cv-00616-MGL |

**DECLARATION OF AMY ERRICHIELLO**
**IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL**

I, Amy Errichiello, declare as follows:

1. I am an attorney with the law firm Akerman LLP, counsel of record for Defendants Kenneth Williams and Plateau Excavation, Inc. ("Defendants") in this action. I am admitted to practice before this Court (S.C. Bar No. 14720).

2. I submit this Declaration in support of Defendants' Motion to Compel Plaintiff to Produce Documents and for an Award of Expenses (the "Motion"). I have personal knowledge of the facts stated herein, and if called as a witness I could and would testify competently to them.

3. One purpose of this Declaration is to place before the Court true and correct copies of the discovery materials and correspondence relevant to the Motion, as required by Local Civil Rules 7.04, 37.01 and 5.01 (D.S.C.).

**A. The Requests and Plaintiff's Responses**

3. On June 5, 2026, Defendants served their First Set of Requests for Production of Documents on Plaintiff pursuant to Federal Rule of Civil Procedure 34 (the "Requests"). A true and correct copy of the Requests is attached as **Exhibit A**.

4. On August 6, 2026, Plaintiff served her written responses to the Requests. Plaintiff did not assert any objection as to the relevance, scope, or burden of the Requests at issue. A true and correct copy of Plaintiff's responses is attached as **Exhibit B**.

5. Contemporaneously with her responses, Plaintiff produced 21 documents consisting of 279 pages, most of which were medical records from calendar year 2025. That production did not include a single email, text message, social media post, or any other electronic message.

**B. Plaintiff's Deposition and the Unproduced Social Media Posts**

6. Plaintiff was deposed on September 2, 2026. Relevant excerpts of the transcript of her deposition are attached as **Exhibit C**.

7. In advance of the deposition, Defendants located and captured social media posts from Plaintiff's publicly available social media accounts. At Plaintiff's deposition, Defendants marked as deposition exhibits a total of 25 social media posts obtained from Plaintiff's publicly available accounts (Deposition Exhibit Nos. 10–15 and 17–35). None of those posts had been produced by Plaintiff in discovery.

8. Plaintiff testified that she took photographs of the vehicles involved in the collision and has medical records stored in her home that she did not search for in connection with the document requested propounded in this action.

9. Each of the documents referenced in Paragraphs 7 and 8 is responsive to one or more of the Requests, and none of them had been produced by Plaintiff.

**C. The Parties' Post-Deposition Agreement**

11. After the deposition, counsel conferred, and I confirmed by email on September 3, 2026 that Plaintiff would produce six categories of documents: (1) social media posts from January

1, 2025 through February 12, 2026; (2) all records relating to Plaintiff's migraines; (3) all records relating to Plaintiff's 2021 wrist injury; (4) all photographs Plaintiff took of the collision and the damage to the vehicles; (5) records sufficient to show Plaintiff's travel schedule from January 1, 2025 to the present, including travel photos, videos, and records such as airline confirmations, hotel folios, and cruise receipts; and (6) records concerning Plaintiff's work schedules from May 1, 2025 to the present. A true and correct copy of that September 3, 2026 email is attached as **Exhibit D**.

**D. Defendants' Repeated Efforts to Obtain the Agreed Production**

12. Since Plaintiff's September 2, 2026 deposition, counsel for Defendants contacted counsel for Plaintiff on at least five separate occasions in an effort to obtain the agreed production without court intervention:

a. **September 3, 2026** — I sent an email confirming the six categories of documents Plaintiff agreed to produce;

b. **September 14, 2026** — counsel followed up regarding the outstanding production;

c. **September 21, 2026** — counsel followed up again;

d. **September 25, 2026** — counsel followed up a third time, reiterating the September 30, 2026 production deadline; and

e. **October 1, 2026** — after the September 30 deadline passed with no production, Defendants served a detailed deficiency letter identifying each outstanding category and setting a final deadline of October 7, 2026 for production and for written confirmation of Plaintiff's preservation efforts.

A true and correct copy of the October 1, 2026 deficiency letter is attached as **Exhibit E**.

13. Plaintiff produced none of the agreed materials by the September 30, 2026 deadline. The additional October 7, 2026 deadline stated in the deficiency letter has likewise passed. As of the date of this Declaration, Plaintiff has not produced the agreed-upon documents, has not otherwise supplemented her responses, and has not provided the requested written confirmation of her preservation efforts.

14. The efforts described above reflect Defendants' good-faith efforts to obtain the discovery at issue and to resolve this dispute without court action. Despite those efforts, the parties have been unable to resolve the issues raised in the Motion.

**E. Reasonable Expenses Incurred in Making the Motion**

15. Defendants seek an award of the reasonable expenses, including attorneys' fees, they incurred in making the Motion pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). The following timekeepers performed work in connection with this matter at the following standard hourly rates: Samuel G. Mann (Partner, Charlotte, NC), $625.00 per hour; Amy Errichiello (Associate, Charlotte, NC), $525.00 per hour; and Danielle Campbell (Paralegal, Orlando, FL), $455.00 per hour.

16. As of the date of this Declaration, counsel for Defendants has expended approximately 25 hours in connection with the Motion, comprising 11.7 hours by Mr. Mann, 11.8 hours by me, and 1.5 hours by Ms. Campbell, for total fees of $14,190. Defendants will provide updated figures, reflecting time incurred in connection with any reply and further proceedings on the Motion, with their reply.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 15, 2026

/s Amy Errichiello

Amy Errichiello, Esq.

akerman

# EXHIBIT "A"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| MIA BROWN,<br><br>*Plaintiff*,<br><br>v.<br><br>KENNETH WILLIAMS and PLATEAU EXCAVATION, INC.,<br><br>*Defendants*. | Civil Action No. 1:26-cv-00616-MGL |

**DEFENDANTS' FIRST SET OF REQUESTS FOR**
**<u>PRODUCTION OF DOCUMENTS TO PLAINTIFF</u>**

Plateau Excavation, Inc. and Kenneth Williams (collectively, "Defendants"), by counsel, pursuant to Rule 34 of the Federal Rules of Civil Procedure, propound the following Requests for Production of Documents (the "Requests") to be answered separately and under oath within thirty (30) days after the date of service hereof.

## <u>DEFINITIONS</u>

1. "Plaintiff" or "You," or "Your" refers to Mia Brown, and any agents, representatives, attorneys, or any other person acting or purporting to act on her behalf.

2. "Plateau" shall mean Defendant Plateau Excavation, Inc.

3. "Williams" shall mean Defendant Kenneth Williams.

4. "Incident" refers to the motor vehicle collision involving Plaintiff and Williams that occurred on or about June 23, 2025, on Interstate 20 in Aiken County, South Carolina, as alleged in the Complaint.

5. “Communication” means and refers to any transmittal of information including correspondence, e-mail, text message, recording in any medium of oral communication, telephone and message log, note or memorandum relating to written or oral communication.

6. “Document” and “Documents” means and refers to any and all written, recorded, filmed, or graphic matter, whether produced or reproduced, on paper, film, hard drives, thumb or flash drives, servers, or other computer storage devices, or any other media. The word “document” is inclusive of correspondence, medical records, bills or invoices, electronically stored information (“ESI”), e-mail communications and attachments, desk or electronic calendars, voicemail messages, text messages, online messaging of any platform whether or not such messages are encrypted (*e.g.*, WhatsApp, Signal, Telegram), social media posts, photographs, videos, computer printouts, and associated metadata.

7. The terms “or” and “and” shall be construed either conjunctively or disjunctively to bring within the scope of these Requests any information which might otherwise be construed to be outside their scope (*i.e.*, to be construed as inclusive rather than exclusive).

**INSTRUCTIONS**

1. If any responsive Document is no longer in existence, cannot be located or is not in Your possession, custody, or control, or to which You do not have access, Identify it, describe its subject matter and its disposition (including, without limitation, identifying the person having knowledge of the disposition).

2. If at any time subsequent to answering these Requests any other responsive information, documentary or otherwise, is located or comes within your custody, possession, or control, the undersigned requests that it be identified and, if documentary, produced.

3. If You are withholding any responsive Documents based on any privilege or discovery immunity, log each Document on a privilege log that identifies the information necessary to properly assess the privilege assertion, including, but not limited to, the author/sender, recipient, subject matter, date, description of the subject matter, and the involvement of any attorney or agent of an attorney.

4. Unless otherwise specified, the relevant time period for the Requests is from January 1, 2025, to the present.

## REQUESTS FOR PRODUCTION

1. All documents identified, reviewed, referred to, or relied upon in your responses to Defendant's First Set of Interrogatories served on June 5, 2026.

**RESPONSE:**

2. All photographs, videos, diagrams, or other visual depictions of the scene, vehicles, or your injuries relating to the Incident.

**RESPONSE:**

3. All documents reflecting any communications between You and any person or entity regarding the Incident, including formal or informal statements to law enforcement, insurance companies, or any third party (oral, written, or recorded).

**RESPONSE:**

4. All medical records, bills, and reports relating to any injuries You claim to have sustained as a result of the Incident.

**RESPONSE:**

5. Documents sufficient to show any diagnosis, prognosis, or treatment plan for injuries allegedly sustained in the Incident.

**RESPONSE:**

6. Documents sufficient to show any physical, mental, or emotional limitations You claim to have experienced as a result of the Incident, including, but not limited to, documents reflecting any permanent injury, scarring, or disability You claim to have suffered as a result of the Incident.

**RESPONSE:**

7. Documents sufficient to show any claimed limitations or changes in Your social life as a result of the Incident, including cancellations, withdrawals, or reduced participation in social, recreational, familial, community, religious, or civic activities; and changes in hobbies, exercise, sports, or travel.

**RESPONSE:**

8. All documents relating to any pre-existing or subsequent physical, mental, or emotional condition similar to those you claim resulted from the Incident.

**RESPONSE:**

9. All calendars, diaries, journals, or logs maintained by you reflecting your activities, symptoms, or limitations since the Incident.

**RESPONSE:**

10. All documents reflecting or relating to any statements, comments, or posts you have made online or in any public forum regarding the Incident, your physical or emotional condition since the Incident, or your recovery.

**RESPONSE:**

11. All documents and communications supporting the allegations in Your Complaint and/or Your alleged damages.

**RESPONSE:**

12. All documents that contradict, impeach, refute, undermine, or are inconsistent with any allegation in Your Complaint or any contention You have made in this action regarding liability, causation, or damages.

**RESPONSE:**

13. All documents You may offer at trial.

**RESPONSE:**

This 5th day of June, 2026.

**AKERMAN LLP**

*/s/ Amy Errichiello*
Amy Errichiello (Bar No. 14720)
Samuel G. Mann (admitted *pro hac vice*)
101 South Tryon Street, Suite 1910
Charlotte, NC 28280
Telephone: (704) 625-7703
amy.errichiello@akerman.com
samuel.mann@akerman.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing *DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF* with the Clerk of the Court using the CM/ECF system, and served on all counsel of record via the Court's CM/ECF system.

This 5th day of June, 2026.

**AKERMAN LLP**

*/s/ Amy Errichiello*

Amy Errichiello (Bar No. 14720)
101 South Tryon Street, Suite 1910
Charlotte, NC 28280
Telephone: (336) 296-7126
amy.errichiello@akerman.com

*Counsel for Defendants*

akerman

# EXHIBIT "B"

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| **MIA BROWN,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**KENNETH WILLIAMS and PLATEAU EXCAVATION, INC.**<br><br>*Defendants.* | **Civil Action No. 1:26-cv-00616-MGL** |

**PLAINTIFF'S ANSWER TO DEFENDANT'S INTERROGATORIES**

1. Identify all persons whom You believe to have knowledge of relevant information, facts or circumstances relating to the allegations set forth in the pleadings filed in this action, and state the facts or circumstances believed to be known to each person, and the source of each person's knowledge.

**Mia Brown**
**2520 Gardner Park Dr**
**Fayetteville, NC 28304**
**Ms. Brown has personal knowledge of the collision and her injuries, treatment, medical history, and damages.**

**Kenneth Williams**
**540 Walton Dr**
**Bethlehem, GA 30620**
**Mr. William has knowledge of the subject collision.**

**Michelle Burton**
**779 Dennock Road**
**Augusta, GA 30906**
**Ms. Burton has knowledge of the collision and the Plaintiff's condition before and after the crash.**

**STPR K. C. Meyer**
**S.C. HIGHWAY PATROL DISTRICT 7**
**1391 Middleton Street**
**Orangeburg, SC 29115**
**Law enforcement has knowledge of the subject collision, the crash scene, roadway conditions, and investigation.**

**All treating medical providers relating to the injuries at issue, as identified in Plaintiff's disclosures and medical records produced. Other than medical records, Plaintiff is unaware of any written or recorded statements.**

2. Describe in detail Your version of how the Incident occurred, including the actions You took immediately before, during, and after the collision.

   **I was traveling eastbound on Interstate 20 in Aiken County, South Carolina, in an area of construction and congested traffic. Traffic came to a complete stop, and I stopped my vehicle with my foot on the brake. While my vehicle was stopped, I got rear-ended by the 18-wheeler behind me. I had no reasonable opportunity to avoid the collision.**

   **Immediately after the collision, I remained at the scene, contacted law enforcement. I later sought medical treatment for pain and symptoms resulting from the collision.**

3. Describe in detail any and all injuries You claim to have sustained as a result of the Incident, including the nature, location, symptoms, and duration of each injury.

   **Plaintiff sustained neck injuries and experiences constant piercing, stabbing, tight, and sharp neck pain, aggravated by neck movement and partially relieved by medication.**

   **Plaintiff sustained back injuries, including low-back pain radiating into both lower extremities and pain with prolonged sitting and standing.**

   **Plaintiff experiences post-traumatic headaches.**

   **Plaintiff sustained right ankle injuries, causing tenderness and pain with walking and standing.**

   **Plaintiff sustained right wrist injuries and experiences constant pain with wrist movement.**

4. Describe in detail any activities, employment or employment-related tasks, hobbies, or recreational pursuits you assert you can no longer perform or have had to limit as a result of the Incident.

   **Plaintiff has had to limit activities at work and at home requiring prolonged sitting, standing, bending, lifting, walking, climbing stairs, and driving because these activities aggravate her low-back, right-ankle, neck, and headache symptoms. Plaintiff has also had to limit repetitive right-wrist movement.**

5. Identify all persons with whom You have communicated regarding the Incident, including, but not limited to, law enforcement, insurance representatives, witnesses, friends and family members, and medical professionals.

**Plaintiff's attorneys and representatives of Morgan & Morgan, P.A., concerning the Incident.**

**STPR K.C. Meyer of the South Carolina Highway Patrol, the investigating officer.**

**The property-damage claims adjuster concerning damage to Plaintiff's vehicle.**

**Plaintiff's mother, Michelle Burton, concerning the Incident and Plaintiff's injuries.**

**Richard D. Young, PA, and Kimberly A. Clark, MD, of Cape Fear Valley Hoke Hospital, concerning Plaintiff's emergency-department evaluation and treatment.**

**Korey Revels, DC, of Revels Chiropractic, concerning Plaintiff's chiropractic evaluation and treatment.**

**Kerry Clancy, PA-C, of NextCare Urgent Care, concerning Plaintiff's right-foot and ankle complaints and treatment.**

**Thai Truong, MD, of Apex Orthopaedics Spine & Neurology, concerning Plaintiff's orthopedic and neurological evaluation and treatment.**

6. Identify all health care providers, including physicians, hospitals, clinics, therapists, or other medical professionals, who have examined, treated, or consulted with You for any injuries or conditions allegedly resulting from the Incident.

**Apex Orthopaedics Spine & Neurology**
**Thai Truong, MD**
**8300 Health Park, Suite 221**
**Raleigh, NC 27615**

**Cape Fear Valley Hoke Hospital**
**Kimberly A Clark, MD**
**210 Medical Pavilion Drive**
**Raeford, NC 28376**

**Next Urgent Care**
**Kerry Clancy, PA**
**217 Glensford Drive,**
**Fayetteville, NC 28314**

**Revels Chiropractic**
**Korey Revels, DC**
**5511 Raeford Road, #100**
**Fayetteville, NC 28304**

7. For each health care provider identified in Interrogatory No. 6, state the dates of treatment, the nature of the treatment provided, and the amounts billed and paid.

**See medical records provided for dates of treatment and the nature of the treatment provided.**

**See below for the amount billed as of August 6, 2026 for each provider**

| | |
|---|---|
| **Apex Orthopaedics Spine & Neurology** | **$12,008.68** |
| **Cape Fear Valley Hoke Hospital** | **$1,701.10** |
| **Next Urgent Care** | **$446.00** |
| **Revels Chiropractic** | **$5,403.00** |

8. Identify all health care providers who have treated You for any injury, illness, or condition in the three (3) years preceding the Incident, including the nature of the condition and the dates of treatment.

**Cape Fear Valley Hoke Hospital**
**210 Medical Pavilion Drive**
**Raeford, NC 28376**

**North Carolina Department of Health and Human Services**
**1915 Health Services way**
**Raleigh, NC 27607**

**Next Urgent Care**
**217 Glensford Drive**
**Fayetteville, NC 28314**

**Aspen Dental**
**1301 N Main St Ste 101**
**Fuquay-Varina, NC 27526**

**Lane & Associates Family Dentistry – Fayetteville**
**912 Robeson St**
**Fayetteville, NC 29305**

9. Identify all employers for whom you have worked from June 1, 2023 to the present, and state whether you missed any time from work or requested physical or emotional accommodation as a result of the Incident.

**Plaintiff did not miss any time off of work.**

**North Carolina State Veterans Home – Fayetteville**
**214 Cochran Ave**
**Fayetteville, NC 28301**

**WNC6 Amazon Warehouse**
**1005 Dunn Rd**
**Fayetteville, NC 28312**

10. State whether You have ever been involved in any other motor vehicle accidents, incidents, or claims (regardless of fault) in the past ten years, and if so, provide the date, location, nature of the incident, and any injuries claimed.

**In 2026, Plaintiff's vehicle was struck in a parking lot in Hope Mills, North Carolina, when another driver backed out and collided with her vehicle. Plaintiff sustained no injuries.**

**In 2024, Plaintiff was a passenger in her sister's vehicle in Augusta, Georgia, when an oncoming vehicle struck the vehicle while it was making a left turn. Plaintiff sustained no injuries.**

11. Identify any payments or benefits You have received or expect to receive as a result of the Incident, including insurance, workers' compensation, disability, or government benefits.

**Plaintiff is not receiving any benefits as a result of the incident.**

12. State the factual basis for Your claim that you suffered permanent injury, scarring, or disability as a result of the Incident, including the identity of all health care providers who have rendered an opinion regarding permanency.

**Plaintiff is not aware of any treating physician who has assigned a permanent impairment rating or stated the degree of any permanent impairment attributable to the subject incident at this time. Plaintiff's treatment remains ongoing. Plaintiff reserves the right to supplement this response.**

**MORGAN & MORGAN, P.A.**

*James G. Biggart II*
James G. Biggart II, Esq.
SC Bar No. 106477
4401 Belle Oaks Drive, 3rd Floor
North Charleston, 29405
T: (843) 973-5186
F: (843) 973-5208
biggartlitigation@forthepeople.com
Attorney for Plaintiff

August 6, 2026
Charleston, South Carolina

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| **MIA BROWN,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**KENNETH WILLIAMS and PLATEAU EXCAVATION, INC.**<br><br>*Defendants.* | **Civil Action No. 1:26-cv-00616-MGL** |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST TO PRODUCE**

1. All documents identified, reviewed, referred to, or relied upon in your responses to Defendant's First Set of Interrogatories served on June 5, 2026.

   **Responsive documents provided herewith, bearing bates numbers: Plaintiff Production File 000001 – 000279.**

2. All photographs, videos, diagrams, or other visual depictions of the scene, vehicles, or your injuries relating to the Incident.

   **Responsive documents provided herewith, bearing bates numbers: Plaintiff Production File 000273 – 000279.**

3. All documents reflecting any communications between You and any person or entity regarding the Incident, including formal or informal statements to law enforcement, insurance companies, or any third party (oral, written, or recorded).

   **No responsive documents in Plaintiff' possession.**

4. All medical records, bills, and reports relating to any injuries You claim to have sustained as a result of the Incident.

   **Responsive documents provided herewith, bearing bates numbers: Plaintiff Production File 000006 – 000027 and 000048 – 000272.**

5. Documents sufficient to show any diagnosis, prognosis, or treatment plan for injuries allegedly sustained in the Incident.

   **Responsive documents provided herewith, bearing bates numbers: Plaintiff Production File 000048 – 000272.**

6. Documents sufficient to show any physical, mental, or emotional limitations You claim to have experienced as a result of the Incident, including, but not limited to, documents reflecting any permanent injury, scarring, or disability You claim to have suffered as a result of the Incident.

   **None at this time.**

7. Documents sufficient to show any claimed limitations or changes in Your social life as a result of the Incident, including cancellations, withdrawals, or reduced participation in social, recreational, familial, community, religious, or civic activities; and changes in hobbies, exercise, sports, or travel.

   **None.**

8. All documents relating to any pre-existing or subsequent physical, mental, or emotional condition similar to those you claim resulted from the Incident.

   **No responsive documents in Plaintiff' possession.**

9. All calendars, diaries, journals, or logs maintained by you reflecting your activities, symptoms, or limitations since the Incident.

   **No responsive documents in Plaintiff's possession at this time. Plaintiff will supplement as discovery continues.**

10. All documents reflecting or relating to any statements, comments, or posts you have made online or in any public forum regarding the Incident, your physical or emotional condition since the Incident, or your recovery.

    **None.**

11. All documents and communications supporting the allegations in Your Complaint and/or your alleged damages.

    **Responsive documents provided herewith, bearing bates numbers: Plaintiff Production File 000001 – 000279.**

12. All documents that contradict, impeach, refute, undermine, or are inconsistent with any allegation in Your Complaint or any contention You have made in this action regarding liability, causation, or damages.

    **All responsive documents within Plaintiff's possession have been provided, bearing bates numbers: 000001 – 000279.**

13. All documents You may offer at trial.

**Undetermined at this time.**

**MORGAN & MORGAN, P.A.**

*James G. Biggart II*
James G. Biggart II, Esq.
SC Bar No. 106477
4401 Belle Oaks Drive, 3rd Floor
North Charleston, 29405
T: (843) 973-5186
F: (843) 973-5208
biggartlitigation@forthepeople.com
Attorney for Plaintiff

August 6, 2026
Charleston, South Carolina

**CERTIFICATE OF SERVICE**

I, Mayla Moussally, an employee of Morgan & Morgan, do hereby certify that on this 6th day of August 2026, I emailed a copy of the above and foregoing documents to counsel of record in said proceeding to the counsel below at their email address listed. Service is perfected via email unless a hard copy was requested in writing by opposing counsel, and then one was mailed to the address below as well:

Amy Errichiello (Bar No. 14720)
Samuel G. Mann (admitted pro hac vice)
101 South Tryon Street, Suite 1910
Charlotte, NC 28280
Telephone: (704) 625-7703
amy.errichiello@akerman.com
samuel.mann@akerman.com
Counsel for Defendants

*Mayla Moussally*
Litigation Paralegal

August 6, 2026
Charleston, South Carolina

akerman

# EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

________________________________

MIA BROWN,
Plaintiff,
v. Civil Action No.
KENNETH WILLIAMS and PLATEAU 1:26-cv-00616-MGL
EXCAVATION, INC.,
Defendants.

________________________________

VIDEOTAPED DEPOSITION OF MIA LAKEITA BROWN

DATE: Wednesday, September 2, 2026
TIME: 10:13 a.m.
LOCATION: DaVinci Rental Office
2501 Bragg Boulevard, Suite A
Fayetteville, NC 28303
REPORTED BY: Maribel Diaz-Ramos
JOB NO.: 8363220

videos?
A No.
Q Would you say what you post on social media is an accurate description of your activities?
A Yes.
Q Were you asked to preserve documents in connection with this case?
A Was I asked what?
Q Were you asked to preserve documents in connection with this case?
A Not that I can think of, no.
Q No one ever asked you to make sure you don't delete anything?
A No. Nobody.
Q Do you recall deleting any emails, text messages, or social media posts recently?
A No, not that I can remember.
Q Do you have an auto delete setting on your text messages?
A I don't think I do.
Q Do you have an auto delete setting on your emails?
A No.
Q Did you take any steps to preserve text messages for the purposes of this case?

A No.
Q Did you take any steps to preserve emails for the purposes of this case?
A No.
Q Did you take any steps to preserve social media posts for the purpose of this case?
A No.
Q Did you provide documents relevant to this case to anyone?
A No.
Q Did you do any searches of your emails for documents related to this case?
A No.
Q Did you do any searches of text messages for documents related to this case?
A No.
Q Did you do any searches of social media posts for documents related to this case?
A No.
Q I'd like to turn next to your allegations. Can you please take another look at Exhibit 1? Have you ever read this document before?
A No.
Q Can you please refer to paragraph 8 on page 2? It reads that "Williams was distracted and

crying instantly. Then I called 911. And after I got off the phone with them, I called my mother to let her know what happened.

Q All right. We'll get back to the 911 call in a minute.

Did you move the car anywhere, or did your car remain in the left lane?

A I removed it over to the median.

Q Did Mr. Williams do the same thing?

A I think he did, yes.

Q And so is that the left median or, like, between -- the space in between traffic going this way and traffic going the other way?

A It was in the -- on the left. It was, yeah, in the left.

Q Did you take any pictures of the car?

A Of my car? Yes.

Q Did you take any pictures of Mr. Williams's truck?

A I took a picture of his tag.

Q Did you produce those pictures in this case?

A Produce? Did I take them?

Q Produce? Did you give them to our side?

A I don't know.

Q Did you give them to your counsel?

A Yes.
Q Approximately when?
A Well, whenever they contacted me for them. Yeah, I think -- I don't know if I did or didn't. I'm not sure. Never mind. I don't know.
Q Do you still have those pictures over your car -- of Ms. Burton's car?
A Yes.
Q Where are they stored?
A In my phone.
Q Okay. We're going to introduce another exhibit. We'll mark this one Defendant's 2.
(Defendant Exhibit 2 was marked for identification.)
MR. MANN: We'll go slightly out of order. Accept our apologies for that. Hopefully, it doesn't confuse anyone as we go through.
BY MR. MANN:
Q So take a moment to look at this. While you're doing so, I can represent to you this is a internal Plateau document containing a report of the collision. Let me know when you're ready.
A Okay.
Q Have you ever seen this document before?
A No.

Q So please turn to page 2. Do you see the photos here?
A Yes.
Q Do these photos look familiar to you?
A Yes.
Q Is this the car you were driving at the time of the incident?
A Yes.
Q Georgia plate number GDY100?
A Yes.
Q Okay. Have you ever seen these photos before?
A No.
Q Have you seen similar photos before?
A The photos that I took on my phone.
Q Do the photos that you took on your phone look similar to these?
A Maybe. I'm not sure.
Q Are there any differences that you can perceive between the photos you took and these photos?
A No. I actually have photos of the inside of the trunk where it was damaged at as well.
Q Okay. Can you describe those for us? What type of damage?
A It was -- the plastic was cracked, and it

after you filed it with the nurse?
A I think I did a appointment at the urgent care, if I'm not mistaken.
Q The same day?
A No, I don't -- I don't remember.
Q Was it soon after or a period of time after?
A It was soon after.
Q Do you retain any records regarding that injury?
A It's probably somewhere in my medical records. I don't have any on hand.
Q Do you have a place in your home where you store your medical records?
A Yeah, I have it in, like, a folder in my closet.
Q Prior to filing this case, did you look in that folder in your closet?
A No. 'Cause I don't recall having a record of that anyways.
Q At any point during the duration of this case, have you looked for that folder to see what records are in there?
A No, not at all.
Q Did you file a workman's compensation claim -- a workers' compensation claim for that

Q Approximately. Prior to the August/September 2025 trip to Dubai, when is the previous time you had left the country before that?
A Probably was the year before that in '24. Yeah, I don't remember.
Q Where did you go in 2024?
A Mexico.
Q Was that also a cruise?
A No. We flew.
Q To what town?
A I want to say that trip was Cabo.
Q Was what?
A Cabo. Cabo, Mexico.
Q Cabo. Speaking of your domestic travel between -- since the incident, so since June 23, 2025, what cities have you traveled to within the country?
A In Florida.
Q When were you in Florida?
A I don't know. Did I go? I don't -- don't remember. I know -- I don't remember, honestly.
Q Do you keep records of your transportation at all?
A I have pictures or where -- if I was there, then yeah.
Q Where are those pictures stored?

A In my phone.
Q So if we went into your phone right now, we could figure out where you traveled?
A Yes.
Q At any point prior to the filing of this lawsuit, did you review the pictures on your phone to determine whether there were responsive documents, or excuse me, relevant documents?
A No.
Q At any point since the lawsuit has been filed, have you looked at the pictures or your phone to determine if there's any relevant documents?
A No.
Q When you travel, do you post photos, videos, or updates on social media?
A Sometimes.
Q How frequently?
A Not too frequent. I really don't post for it all.
Q What drives the decision of when you post about a trip and when you do not?
A It just depends on if I get some good pictures or not.
Q When you post about your trips, do you usually post from the destination, or do you wait till

boat?
A Arrive in the morning, leave at night or afternoon. Mid -- late afternoon, like five, six o'clock.
Q Do you also have a private Instagram account?
A I only be at -- like, on one Instagram account.
Q But that one's private; right?
A I think so.
Q And do you know when that one became private?
A No.
Q Have you reviewed your Instagram account for photos or videos responsive to our document requests?
A Not at all.
Q Do you believe there are post or videos showing you were traveling on your private Instagram account?
A Correct. Yes.
Q What destinations would have photos or videos from them on your Instagram account?
A The cruise. Probably when I went to Miami.
Q When did you go to Miami?
A I want to say that was March or April. I

A Because nothing seemed to work. I'm in pain on a day-to-day basis. I -- just walking around here in pain every day from an accident that could have been avoided.
Q Let's do one more quick exhibit. Do you recognize this post?
(Defendant Exhibit 32 was marked for identification.)
A Correct.
Q Was it on your Facebook account?
A Correct.
Q It's dated September 25, 2025; correct?
A Correct.
Q Where is this picture taken?
A Mexico.
Q And when was that?
A 2023, '24, whatever year it was. I'm not sure.
Q Do you have any photos from your more recent Mexico trip?
A Probably, yes. I don't -- I can't remember what I did, what photos I took.
Q Where would those likely be?
A In my phone.
Q In your phone. Did you post any of them to

safely if you were holding the phone while you were recording?

A I mean, it's not like I'm just constantly looking at my phone. It's a quick video, and then the phone is down. It's not the whole time recording the video.

Q Okay. So we established that you got MRIs done on September 21, 2025; correct?

A Correct.

Q Did you travel anywhere else between September 21, '25, and the end of December 2025?

A Possibly. Yes.

Q To where?

A I can't remember.

Q Domestic or international?

A I know I probably didn't fly nowhere. I probably drove or rode somewhere.

Q But you don't recall where?

A If I'm remembering right. What was that?

Q But you don't remember where?

A No.

Q Is there a source you could go to to figure out if you traveled?

A Yes.

Q What would that source be?

A My phone and my photos to see if I took pictures if I did travel.
Q Is there any other source of your travel record other than photos on your phone?
A If it is, it's not -- I don't have it.
Q You don't put anything in the calendar?
A No.
Q Is there any sharing of your location data? Do you know that app?
A Yes. Find my -- share your location with your friends or family.
Q Who do you share your location?
A It's quite a few people.
Q Approximately how many?
A Probably about 10, 11.
Q Do you know if there's a record of your location pinging different places through that app?
A I don't know how that works.
Q Okay. I'm going to hand you what we're going to mark Defendant's Exhibit 35. And this one, like a couple that we've done to today, starts with a screenshot of a video. We're going to play that video for you in a moment. Before I do, do you recognize this?
//

CERTIFICATE OF DEPOSITION OFFICER

I, MARIBEL DIAZ-RAMOS, the officer before whom the foregoing proceedings were taken, do hereby certify that any witness(es) in the foregoing proceedings, prior to testifying, were duly sworn; that the proceedings were recorded by me and thereafter reduced to typewriting by a qualified transcriptionist; that said digital audio recording of said proceedings are a true and accurate record to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

Maribel Diaz-Ramos

MARIBEL DIAZ-RAMOS
Notary Public in and for the
State of North Carolina

CERTIFICATE OF TRANSCRIBER

I, CRYSTAL ORR, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding, that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.



CRYSTAL ORR

akerman

# EXHIBIT "D"

**From:** Errichiello, Amy (Assoc-WSM)
**Sent:** Thursday, September 3, 2026 10:00 AM
**To:** Cooper Klaasmeyer
**Cc:** BiggartLitigation; James Biggart; Mayla Moussally; Mann, Samuel (Ptnr-Clt)
**Subject:** Re: Brown, Mia v. Plateau Excavation Inc. & Kenneth Williams (1:26-cv-00616-MGL)

Hi Cooper,

Following Ms. Brown's deposition, I wanted to memorialize our discussion regarding discovery issues at the end of the day. You agreed to produce documents missing from Ms. Brown's production, specifically including:

- Social media posts from January 1, 2025 through February 12, 2026;
- All records relating to Ms. Brown's migraines;
- All records relating to Ms. Brown's 2021 wrist injury;
- All photographs Ms. Brown took of the collision and/or damage to the vehicle; and
- Records sufficient to understand Ms. Brown's travel schedule between January 1, 2025 and the present, including, but not limited to, photos or videos stored on her phone that reflect travel and travel records (*e.g.*, airline ticket confirmations, hotel folios, cruise receipts, etc.)

We also request records concerning Ms. Brown's work schedules from May 1, 2025 to the present. I don't believe we expressly discussed this during our chat after the deposition but we did ask questions to Ms. Brown concerning those records and believe it is within the scope of Rule 26 given the nature of the claims and defenses.

Defendants agreed to produce copies of the social media posts used during the deposition and the additional video that we pulled but did not use as a deposition exhibit. As we discussed, we were able to pull the ELD data from the truck from the vendor and will produce that along with records of Mr. Williams' medications.

We further discussed extending the current discovery deadlines given the outstanding discovery outlined above and the upcoming mediation scheduled for October 14th. Would your client agree to a mid-December discovery close, with all corresponding case management and expert-related deadlines extended accordingly? We believe a brief extension would allow the parties sufficient time to complete the remaining discovery and address any issues arising from the forthcoming productions.

Thank you,

Amy

**Amy Errichiello**
Associate
Akerman LLP | 101 South Tryon Street, Suite 1910 | Charlotte, NC 28280
D: 336 296 7126 | C: 336 324 7658
amy.errichiello@akerman.com

akerman

# EXHIBIT "E"

akerman

Samuel G. Mann

Akerman LLP
101 South Tryon Street
Suite 1910
Charlotte, NC 28280

T: 704 625 7700
F: 704 625 0300

October 1, 2026

**VIA E-MAIL**

James G. Biggart II
Cooper Klaasmayer
Morgan & Morgan
4401 Belle Oaks Drive
Suite 300
North Charleston, SC 29405

**Re: *Brown v. Williams* (1:26-cv-00616-MGL)**

Dear Counsel:

We write regarding Plaintiff's continued failure to produce documents that she agreed to produce and is independently obligated to produce. As detailed below, these materials have been outstanding for months, Plaintiff did not object to their discoverability, and her September 2, 2026 deposition testimony raises serious preservation concerns. Given the approaching mediation, further delay is untenable.

Defendants served written discovery requests on June 5, 2026. Plaintiff served her responses on August 6, 2026, without objecting to the relevance, scope, or burden of the requests at issue. For several categories of documents, Plaintiff responded that there were no responsive documents in Plaintiff's possession for Request No. 3 (communications concerning the incident), Request No. 6 (documents sufficient to show physical, mental, or emotional limitations purportedly connected to the incident); Request No. 7 (documents sufficient to show limitations in social life purportedly connected to the incident); Request No. 8 (documents relating to pre-existing physical, mental or emotional conditions similar to those purportedly connected to the incident); and Request No. 10 (documents reflecting or relating to statements, comments, or posts relating to the incident, any physical or emotional condition since the incident, or recovery).

During Ms. Brown's September 2, 2026 deposition, Defendants learned that documents responsive to those requests exist within the possession, custody, or control of Plaintiff and those documents have never been produced. Even more concerningly, Plaintiff also testified that she did not undertake any effort to preserve, search for, or collect such documents, and that she was not asked to do so. (*See, e.g.*, Brown Tr. 31:7-10; 39:6-40:19; 46:6-9; 131:18-23; 160:5-13).

After Ms. Brown's deposition, counsel discussed live and Defendants confirmed by email on September 3, 2026 that Plaintiff would produce the following categories of documents:

- Social media posts from January 1, 2025 through February 12, 2026;
- All records relating to Ms. Brown's migraines;
- All records relating to Ms. Brown's 2021 wrist injury;
- All photographs Ms. Brown took of the collision and/or the damage to the vehicles;
- Records sufficient to show Ms. Brown's travel schedule from January 1, 2025 to the present, including travel photos/videos and travel records (airline confirmations, hotel folios, cruise receipts, and the like); and
- Records concerning Ms. Brown's work schedules from May 1, 2025 to the present.

We followed up regarding these materials on September 14, September 21, and September 25. To date, Plaintiff has produced none of them.

Defendants have provided ample time for Plaintiff to complete this production. The September 30, 2026 deadline afforded to Plaintiff was four weeks after her deposition and nearly four months after service of the requests. That deadline passed without any production. With mediation scheduled for October 14, 2026, further delay materially prejudices Defendants' ability to prepare, undermines the likelihood of a productive mediation, and precludes any further extension.

Separate and apart from Plaintiff's failure to meet the agreed production deadline, there is no genuine dispute over the discoverability of these materials. Plaintiff's responses to Defendants' First Set of Requests for Production asserted no objection based on relevance, scope, or burden. Under Federal Rule of Civil Procedure 33, the grounds for objecting to an interrogatory "must be stated with specificity," and any ground not stated in a timely objection may be waived. Courts in this District apply the same principle to requests for production, consistent with the principle in Rule 34 requiring that any objection to a part of a request specifically state such part in any objection. *See D.C. v. S.C. Dep't of Soc. Servs.*, 2022 WL 22859673, at *3 (D.S.C. Nov. 4, 2022). Because Plaintiff responded without objecting to discoverability, the present issue is not whether the materials are discoverable, but her failure to produce them. In any event, the relevance of these materials is clear. The materials at issue—including medical records, text messages, social media content, photographs, and videos—bear directly on Ms. Brown's claimed injuries and limitations.

Ms. Brown's deposition testimony also raises a related and serious concern that relevant evidence may already have been lost. A litigant's duty to preserve arises when the party "reasonably should know that the evidence may be relevant to anticipated litigation," not merely when suit is filed. *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). Ms. Brown testified that she contacted a legal services agency to identify legal representation just days after the incident, making it reasonably likely that litigation would commence in June 2025. Once that duty attached, Ms. Brown was required to take reasonable affirmative steps to preserve relevant materials, including, but not limited to, suspending routine deletion practices and refraining from

taking actions that might spoil records. Her testimony indicates that she did not do so. She testified that she took no steps to preserve emails, social media posts, or text messages; conducted no search of her text messages or social media for responsive materials; provided no responsive materials to anyone; and was never instructed to preserve documents or refrain from deleting them. She also testified that she did not review her (private) Instagram account for responsive photographs or videos while also acknowledging that the account likely contains posts reflecting travel and activities relevant to her damages claim. While making previously publicly accessible social media accounts private—which based on our present understanding is what Ms. Brown did between the time she filed this case and her deposition—is not the same as deleting such posts, it does raise concerns that Ms. Brown may have sought to keep potentially relevant information out of the record.[1] Taken together, these revelations raise substantial questions concerning whether relevant electronically stored information has been preserved and warrants immediate clarification of the steps, if any, taken to preserve, collect, and produce that information.

Defendants demand that Plaintiff immediately: (1) suspend any automatic deletion settings and cease deleting, altering, or deactivating any potentially responsive materials or accounts; (2) take all reasonable steps to preserve, in native form, responsive emails, text messages, social media content, including deleted or archived items and content associated with private or deactivated accounts, photographs, videos, travel records, and medical records; and (3) confirm in writing the preservation steps she has taken since litigation was first reasonably anticipated and when each such step was taken. Defendants reserve all rights and remedies arising from any failure to preserve, including those available under Federal Rule of Civil Procedure 37(e).

Please produce all outstanding materials and provide the written preservation confirmation described above no later than October 7, 2026. If Plaintiff does not provide a complete production and written confirmation by that deadline, Defendants will seek appropriate relief from the Court. Defendants also will not agree to extend the case deadlines previously discussed.

We remain available to confer if there are specific issues you believe warrant discussion.

Sincerely,

*/s/ Samuel G. Mann*

Samuel G. Mann

Cc: Amy Errichiello, Esq.

[1] To be clear, we are not accusing Ms. Brown of spoliation at this time. We do, however, believe there are unanswered questions about Ms. Brown's management of her social media accounts. We intend to explore these matters in further discovery requests if not adequately addressed in the meantime.